Good afternoon. May it please the court. My name is Stacy Tolchin, and I, with my co-counsel Megan Brewer, represent Claudio Anaya Arce today in his claim under the Federal Torts Claim Act. I would like to reserve four minutes of my time for rebuttal. The government unlawfully deported Mr. Anaya Arce in violation of this court's stay of removal. For two weeks, he was stranded in Mexico and afraid for his life and safety because of past events in Mexico. Once he was returned to California because of the court's intervention, the government sui sponte reconsidered his finding that he did not have a reasonable fear of persecution and placed him into withholding-only proceedings before an immigration judge. He sought damages under the FTCA for a violation of state torts because the FTCA waives the United States' sovereign immunity for claims against law enforcement officials who would be liable as otherwise as private actors. The purpose of the FTCA is to compensate individuals harmed by government misconduct. It is a remedial statute and should be construed liberally, and its exceptions should be read narrowly. This is not a Bivens claim. He does not seek damages for constitutional violations. He does not seek damages for violations of the Immigration and Nationality Act. He seeks recovery for negligence, intentional inflection of emotional distress, and false arrest imprisonment, as authorized against the United States under the FTCA, 28 U.S.C. 1346B. Can I have you start with the statutory language of Section 1252G, which plainly says, No court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the AG to commence proceedings, adjudicate cases, or execute removal orders. How should we interpret that plain language? Right, Your Honor, so there's two arguments on this. The first is the repeal argument that's similar to the Tucker Act cases and whether 1252G partially repealed the FTCA. And if you look at the jurisprudence on statutory repeal, the Ruckelhaus decision from the Supreme Court and this Court's decision in NLRB v. Colca, they say that there's either an explicit repeal or a repeal by implication. And an explicit repeal only exists if there's an exact reference to the statute, the predecessor statute. The Supreme Court's decision in Fresalt v. ICC 494 U.S. 1 addresses that notwithstanding language in another statute and says that's not enough. There has to be an explicit reference to the predecessor statute to have an explicit repeal. So then you look towards whether there's a repeal by implication. Of course, repeals by implication are disfavored, and they only apply under two circumstances, one, where the statutory language is an irreconcilable conflict with the first statute, or two, where the second statute completely subsumes the first. Obviously, the second provision doesn't apply because IRA-IRA did not subsume the FTCA. But as to the first, there is no irreconcilable conflict. And there's three ways to read the statute so that they're consistent at least. The first is that the restrictions on 1252G are only for violations of the INA. This is, of course, a State tort issue, right? And so it's different than a Bivens issue. It's different than habeas. It's different than a mandamus. It's a violation of a State tort, and here a violation of the court stay. And if you look at the Carlson v. Green and FDIC v. Meyer, they talk about how the FTCA really is about State torts, and that's the law that you're looking at. So, again, this shows that there is no irreconcilable conflict. The second argument would be that 1252 is discretionary. Obviously, this is an issue that we dispute regarding Silva. The Eighth Circuit's decision in Silva finds that 1252G applies all across the board, not just discretionary claims. But if you look at AADC, which is the Supreme Court case that really looks and analyzes 1252G, it's about what this court in Hovsepian called the constraining the evils of prosecutorial discretion, right? And so AADC was a case where there was legal authority to institute deportation proceedings, but the claim was that they shouldn't be instituted because these were selective enforcement claims based on political opinions. And the Supreme Court in AADC says there was legal authority. 1252G bars the restraint on discretion. And here, of course, there was no legal authority to execute a stay because there was a court of this court had entered the order. But the third important component of this is that in the same statute that 1252G is 1357 under 8 U.S.C., and 1357G7 and 8 are references explicitly to the FTCA. And those are provisions where state actors who are empowered to enforce immigration laws are still, under Congress's reading under IRA-IRA, still liable under the FTCA. So all of this goes to show that there was no express intent from Congress to partially repeal the FTCA. Based on all of that, I don't think that G would encompass all of the claims required. I do want to alert, Your Honor, that there is a circuit split, as you probably know, on whether G is discretionary or not. Hovsepian, from this court, does read the statute narrowly and does say that it is focused on only cases where there is legal authority to act, but there's a constraint on discretion. And the 11th Circuit, 6th Circuit, and 3rd Circuit all agree with that approach. It's the 8th Circuit and 5th Circuit that have read AADC to allow 1252G to encompass all legal claims. But given that issue, I think if the Court reaches the first issue regarding repeal, it doesn't even need to get into whether or not G is discretionary or not. But don't we have, like, a Supreme Court authority that says it's discretionary most recently in Jennings v. Rodriguez? Yes. Jennings does look at it in terms of discretionary. Jennings is not referenced. Well, actually, I think Jennings is issued after Silva. So there is an Hovsepian is really clear language. I did want to direct the Court to Sysico because Sysico does address 1252G. It doesn't address Hovsepian or AADC or discretion. But most notably in that case, in Sysico, it was a Bivens case, and the person was placed initially in expedited removal proceedings and then placed into regular removal proceedings, the plenary proceedings before a judge. So there was legal authority to detain the plaintiff. And the issue then goes to discretion. So even in that case, if 1252G applied, it still would be distinct from here where there was no legal authority to execute a removal order. The other thing that's notable is the Court's case in Mermetti. Mermetti first addresses the Bivens issue and then FTCA. And, of course, it dismisses the Bivens portion based on the alternate remedial scheme. And even though it doesn't cite to Sysico, it's the same reasoning of Sysico, which is that there are other avenues in the INA to pursue a violation. But then it goes on to the FTCA component of the case and does not mention 1252G, does not mention alternate remedial scheme, instead assumes that there is jurisdiction, and then goes on to dismiss, of course, under the discretionary function issue, which is not relevant here. So moving on, the decisions in the Takarat cases, I think, are really instructive. There hasn't been a case yet applying these Takarat cases to the FTCA, but it's essentially the same cases over and over where there's a damages action under the Takarat and then a subsequent substantive accused repeal or asserted repeal. And in all of those cases, the Supreme Court and mostly the Federal Circuit go through the analysis of the explicit repeal versus the implicit. In all of those cases, they find that the explicit repeal requires the exact language of the predecessor statute, and repeal by implication is disfavored, and if the statutes can read to be reconciled, then there is no implicit repeal. So moving on, then, to the last issue that was addressed, which is the subject matter jurisdiction under the foreign country exception. That was not an issue. Sotomayor, before you move on, what's the narrowest rule that we can craft in this case that would give the court jurisdiction over Mr. Arce's claim? There was no explicit repeal and there was no repeal by implication. That's the narrowest rule. And it does follow the line of cases for NLRB v. Colca, Ledezma-Galicia. These are the explicit repeal and implicit repeal decisions. There hasn't been a court that has applied this analysis. There was a district court case in Medina that was then affirmed on different to statutory interpretation and not address the scope of 1252G. But that rule doesn't give any effect to the statutory language of any cause or claim. Well, it does because the rule for an explicit repeal is that you actually have to identify it, right? So any cause or claim is not enough. And if you look at the pre-salt decision from the Supreme Court in 1990, it looks similar language on the notwithstanding any other rule. And it still says that's not enough for an explicit repeal. If you look at the FTCA itself, it has many, many, many explicit exceptions, right? It's got exceptions for the fairest doctrine for military service, for forfeitures, for foreign country exception, discretionary function exception. Congress was very clear when it wanted to provide an exception under the FTCA. And that was not, you know, general provisions like the discretionary function, but also subject matter ones. So like any claim involving the postal service, any claim involving military service. Congress didn't do that when enacting IRA-IRA. Not only did it not amend the FTCA, not only did it not reference the FTCA in 1252G, it in fact does provide a reference acknowledging liability under 1357. So the narrowest way to read this is to find that G does not apply to FTCA claims, period, because there's no explicit repeal and no repeal by implication. So then moving on to the foreign country exception. This was not addressed by the lower court, but a plaintiff does acknowledge it as an issue of subject matter jurisdiction that's appropriate for resolution. The Supreme Court's seminal decision on this is Alvarez-Marchain, and it was recently interpreted by the court's decision in Holt right before the reply brief was filed. But essentially what Holt says is that when you're looking at the foreign country exception, you look at two things, the injury and the damages. And those are distinct things. The injury is a discrete act that renders the defendant liable for some violation of the law. But damages are ongoing. So if you think about it in the context of, let's say, ICE assaults an individual and legally deports him to Mexico and then he dies in Mexico, the injury is in the United States, right, when he's assaulted. But the damages are ongoing, those are accrued while he's in California as well as while he's in Mexico. And so even under Alvarez-Marchain and under Holt, the FTCA foreign country exception wouldn't apply because at every time during that, the plaintiff was in the United States. And that's the key inquiry. Where was the plaintiff during the legal violation? I'd like to reserve my remaining time. All right. Thank you, counsel. Good morning, Your Honors. May it please the Court, Joseph Tarr on behalf of the government. Your Honors, this Court should affirm the district court judgment dismissing this case for lack of subject matter jurisdiction because it falls squarely within the ambit of Section 1252G. Section 1252G provides that notwithstanding any other source of law, no court shall have jurisdiction over any cause or claim arising from a decision or action by the Department of Homeland Security to commence proceedings, adjudicate cases, or execute removal orders. Now here, Mr. Arce's removal was an unfortunate mistake, but it was still an action to execute a removal order. The only two circuit courts that have squarely addressed this issue, Silva, the Eighth Circuit case, and Foster, the Fifth Circuit case, have held that Section 1252G does bar jurisdiction over FTCA claims arising from an action to remove an alien even where that removal had been stated by a court or by a regulation. Counsel, let me just ask a hypothetical so I can better understand your position. Let's assume that a foreign national, not a U.S. citizen, will testify under subpoena before a grand jury about detaining abuse by ICE agents, and there's a court order saying you've got to keep this person in the country, you can't have him removed. But the ICE agents say, you know what, we'd rather have him gone than testify before the grand jury, so they affect his removal. Under your position, would there be no cause of action? I'm not sure that that would fall under one of the three discrete actions that are enumerated in Section 1252G. How is it different in this case? In this case, the removal was the injuries that are alleged, denial of reentry, being stranded in Mexico, are directly and immediately followed from the action to execute the removal order. In the case you're talking about, it seems like there would be a, greater attenuation between a specific action to execute a removal order and the particular tort alleged. Well, I think in both cases there's an order saying don't remove this person, and someone is. Now, in one, in my hypothetical, it was an evil plot to remove this person, and I think in this case you're suggesting it's a mistake. But other than the mental state of the agents executing the order, I don't really see there being a difference. In both cases there's an order from a court saying don't remove somebody, and, in fact, they were removed. So is there another difference between my two hypotheticals, or the hypothetical in this case other than that? Well, just that I do think that the mental state is not wholly irrelevant. I think that the more intentional the conduct and the less that it is, you know, intended as a good faith, perhaps negligent effort to affect the removal order, the harder it is to say that it arises from a decision or an action to execute the removal order. Well, I could see there being a difference, perhaps, in the underlying cause of action or in the amount of damages. But as to our jurisdiction, though, I don't think our jurisdiction would turn on the mental state of the agents, would it? I don't see anything about that in 1252 or the case law interpreting it. No. That's correct. There is nothing in the statute. And I don't know if any of the cases have actually addressed this hypothetical. So I just, to be clear, then I think your position has to be then that under the hypothetical I gave you that there would be no cause of action. I mean, that's not this case. And I think the argument is that there would be no cause of action there. True. But the logic extends. The logic does extend. And I think maybe perhaps instructive is Justice Alito's opinion in the recent Rodriguez case where they're talking about whether the arising from a separate provision, 1232A, about whether that could encompass, and there they're dealing with immigration detention, and the issue is would that encompass abuse of detainees. And Justice Alito talks about how, well, there's a common sense limitation to the interpretation of arising from that I think could also be applied in a scenario like this to say that conduct that is so intentionally wrongful is too attenuated from the execution of a removal order. If we read 1252G as limited to discretionary, discrete discretionary decisions or actions, as we said in Hovsepian, then how is it an exercise of discretion when there's a court order in place staying the removal? Two points on that, Your Honor. And I don't believe that Hovsepian actually addresses whether this particular issue would be not discretionary and so not fall under 1252G's bar. But assuming that the Court says 1252G only applies to discretionary decisions here, executing a removal order is still a discretionary type decision, even if in this instance the stay would have prevented the lawful execution of the removal order. And I think if you look at the. There's still discretion even though there's a court order saying that you can't remove someone? Not in this individual case, but overall the action to remove somebody or decision to remove somebody is a discretionary type activity. Right, but we are talking about individual cases and individual exercises of discretion here, right? Yes, but if you. As opposed to programmatic. Go on. If you look at the language of the AADC case, it doesn't seem to talk about individual applications of the decision or action to remove aliens. It talks about types of activity. It talks about there the issue was the no deferred action decisions. Sure. At the macro level, the decision to remove someone is discretionary. But with regard to the facts of this case, once a court order is in place staying removal, does DHS have the authority to exercise its discretion? It's got to comply with the court order, right? You indicated that it was a mistake not to comply with the court order, but at the point the court order is in place, doesn't that mean that's no longer an exercise of discretion? Yes. For this individual case. For this individual case, yes, and I think actually the Silva decision talks about that where it says, well, you know, even if the execution of the removal order despite the stay is not exactly discretionary, it also doesn't form the other polar opposite, which is constituted by the Hovsepian case and in the Eighth Section under 1232G for backdrop, purely legal questions that form the backdrop for the Attorney General's later exercise of discretion. And that is the sort of issue that is carved out of 1232G under Hovsepian. That's not what we're dealing with here. To analogize, if appellant was making a claim that DHS did still have legal authority despite the stay provision in either the regulations or the court stay provision to execute the removal order, then that would be the sort of backdrop purely legal question that there would be jurisdiction for under 1232G under the Hovsepian and the Eighth Circuit's JAMA ruling. However, here we're dealing with the actual action to execute the removal, and I think it's significant that 1232G talks in terms of both decisions, which are, you know, have an inherently discretionary component, and actions, which seem somewhat less discretionary. 1232G applies to both decisions and actions to execute removal orders, which I think speaks to the intent to have 1232G apply to purely discretionary determinations. But the execution took place after the court order saying you cannot deport this person, right? Yes. Yes, Your Honor. Shortly thereafter, but yes. So there was a decision to remove after the order. I don't know how you can separate out. There might be a factual question. There might be, I have in mind, a factual question of did the agency know about the court order at the time it removed Mr. Arsig, which might be one level of defense. I don't know how that would work in a tort action, but so there's that factual question, but there's not a factual question about the timing of the removal, right? No. The execution of the removal order. That's correct. The removal, he was booked out of the Adelanto detention facility somewhat less than two hours after the court, after the automatic stay provision went into effect. I think, though, here that, again, that the Eighth Circuit opinion in Silva is instructive, that even if there was a stay in place, that doesn't negate the existence of the removal order, and what's at issue here is the action to accomplish that removal order. Now, opposing counsel says there's a circuit split. She said, identified the Fifth and the Eighth on one side and then three other circuits, I think the Third, Eleventh, and Sixth on the other side. Do you acknowledge the split in the holdings of the other circuits? I don't think those other circuits squarely addressed this issue of whether these enumerated, whether 1232G applies to nondiscretionary determinations. If you look at the two cases that are discussed at length in Appellant's brief, the Madu and Mustada cases, and I might be mixing up the order, but one makes a very similar argument, such as in Hovsepian and Jama, that these backdrop legal questions are still carved out from 1232G, but not the actual particular decision or action to execute the removal order. And the other, it deals with an ineffective assistance of counsel claim. That was, and the reasoning there was that was just collateral to any of the three enumerated actions in 1232G. So I don't think that either of those cases stand for the proposition that 1232G does not cover nondiscretionary decisions to execute removal orders. How would, suppose DHS did exactly what it did here, only this came up on the court holding DHS in contempt for having violated its court order. Would that contempt action also be precluded under 1232G in your mind? I don't, if, so, and I'm just trying to conceive of the hypothetical. Would that contempt action arise in the petition for review, for instance? That. Well, I'm just, the court, as a matter of its inherent powers, can hold someone in contempt for intentional violation of a court order. And we don't know yet whether this was intentional or not, or a mistake or what. But theoretically, under your broad view of 1252G, the court would not be allowed to engage in its ordinary contempt proceedings in its inherent powers, because that would be a claim or cause arising from the deportation. Well, I don't, I don't think it would be. I'm not, see, I'm trying to conceive of what the cause or claim would be there, and. It would be holding the government in contempt for violating the court's order. Yes, but that sounds like it would be. And defining, that's a judicial, inherent judicial proceeding. I totally agree. It just sounds like that would be a court-initiated action and not based on a claim. It's still a cause or action. I mean, it still seems to fall under your broad reading of 1252G. I guess it could. But in my mind, the most logical place for that to occur would be in the petition for review that Mr. Arce had filed from his denial of credible fear. And if it occurred within that process, then I don't think we would say that it falls within, falls within the jurisdictional bar of 1252G, because that process is accepted from those bars. That is the place where you challenge your removal, is in the petition for review process. So if the contempt proceeding arose there, I don't think we would be making the same argument that it was, that there was no jurisdiction. If I could. I'm totally, I was totally confused by that answer, because I'm not sure that you addressed the hypothetical. This is a situation where the removal order is in place, and the court issued an order saying that you have no authority, essentially you cannot remove this person. Under your interpretation of arising under the government's authority to execute a removal, there would still be no jurisdiction for subsequent contempt proceedings, right? No. I think that if the contempt proceeding, if so, the court entered the automatic stay, Mr. Arce was removed, and then the contempt proceeding flowed from that, from the scope of 1252G, because that was a proceeding to establish entitlement to withholding from removal. I think you'd be arguing that it was outside of that, because it was an exercise of the court's independent inherent powers. I mean, you'd be arguing that we didn't have jurisdiction, right? And you'd have an argument that it was an exercise of the court's inherent powers, and therefore it was a cause or claim arising from the execution of a removal. You'd just be arguing the flip side. Who knows who would buy it, but that's just, I'm just saying. It's possible, and I hope we wouldn't be arguing that, but I think that that case is distinguishable if the contempt proceeding arises and then the petition for review, which, you know, we have represented as the alternative remedial scheme to vet these cases. I don't know of any other case in which there's been an awful removal or detention pending removal. Was there an order of contempt issued in this case for violation of the court's order? Not to my knowledge. The court did order that the government return, Mr. Arce, which it did. I don't know of any order in addition to that. Addressing the 1357, and I see that my time's almost up, so I'll just address this quickly. Okay. Go ahead. The 1357G8 issue, what that merely says is that state officers cooperating with immigration enforcement will be liable or immune from liability to the same extent as federal officers. So if federal officers are immune from liability under 1222G, then that would apply to state officers as well. It doesn't indicate anything further than that. And for these reasons, this court should affirm the district court judgment. Thank you very much. All right. Thank you very much, counsel. I think you had a little time left. Oh, no. I mean, not you. Sorry. I was talking to Ms. Tolchin. Thank you, Your Honor. Your Honor, damages actions are a disincentive to government misconduct. Right. When there's a court order in place, the government needs to know that there are ramifications if it's violated. In immigration, we have Bivens and we have the FDCA. We don't really have much of Bivens anymore, as you know, because of Sysico and because of Mermetti. Bivens allowed for injunctive relief, for punitives, for liability against individual officers, for jury trials. We don't get any of that under the FDCA. The FDCA is the only thing that's left to have any consequences for government misconduct. Is there a dollar limit in damages under the FDCA? No. The only rule is that you're limited to the amount that you claim under the administrative complaint. So if I claim $150,000 in the admin complaint, that's the most we can get. But, again, there's no punitives, right? And so I'll just give you an example. Right now, I have a TRO that was issued by a district court. I am petrified that the government is going to violate the TRO and remove the client because of this case and because of Sysico and because of Mermetti, because there is no accountability towards government misconduct. There was no contempt order in the Ninth Circuit. Unfortunately, this practice of unlawful removals, as you can see from case law, is rather common. And here we allege that there was – potentially it was intentional and it was certainly negligent. And I personally made many, many efforts to make sure that the government knew of this day, and he was still deported. But there has to be some sort of consequence for when the government is violating the law, when violating the rules. There was no discretion here. There was no legal authority to deport him. And there has to be a consequence for it. With that, thank you very much. Have a good afternoon. Thank you, counsel. RSA versus the United States is submitted.
judges: Wardlaw, Nguyen, Owens